**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

VILLAGE OF TAOS SKI VALLEY, a New
Mexico municipal corporation, and
INTEGRATED WATER SERVICES, INC.,
a Colorado corporation,

      Plaintiffs,

v.                          Case No.

OVIVO USA, LLC, a Delaware
limited liability company, and
LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts corporation,

      Defendants.

<u>**NOTICE OF REMOVAL**</u>

PLEASE TAKE NOTICE that Defendant OVIVO USA, LLC. ("Ovivo"), by and through its undersigned counsel, hereby files this Notice of Removal of the above-referenced action from the Eighth Judicial District Court of the State of New Mexico, County of Taos, in which it is now pending, to the United States District Court, District of New Mexico, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 and the applicable Local Rules of the United States District Court for the District of New Mexico.

As grounds for removal, Ovivo states as follows:

## I.    PROCEDURAL HISTORY

1.    Plaintiffs Village of Taos Ski Valley and Integrated Water Services, Inc. ("Plaintiffs") commenced this litigation by filing a Summons and Complaint on February 24, 2023, Case Number D-820-CV-2023-00062, in the Eighth Judicial District Court of the State of New Mexico, County of Taos (the "State Court Action"). Ovivo was served with the Complaint on March 13, 2023. As required by 28 U.S.C. § 1446(a), true and correct copies of all process, pleadings, and orders filed in the State Court Action are attached hereto as **Exhibit A.** In the

Complaint, Plaintiff asserts the following causes of action against Ovivo related to services provided by it: Count 1, Breach of Contract: Count 2, Unfair Trade Practices; and Count 4, Breach of Covenant of Good Faith and Fair Dealing. *Id.*, Compl. pp. 6 – 9.

2.      No further proceedings have occurred in the State Court Action as of the filing of this Notice of Removal. Ovivo has not answered the Complaint. The deadline to answer or otherwise respond has not yet expired. Ovivo will answer or otherwise respond to the Complaint in compliance with the deadlines set forth in Fed. R. Civ. P. 81(c).

3.      This case is properly removed to this Court under 28 U.S.C. § 1441 because removal is timely, this Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1332 and 1441, and Ovivo has satisfied the procedural requirements for removal.

## II.      TIMELINESS OF REMOVAL

4.      Ovivo was served with the Complaint on March 13, 2023. Ovivo is filing a notice of removal within 30 days of service of a copy of the initial pleading setting forth the claims for relief upon which such action is based.  Therefore, this notice of removal is timely under 28 U.S.C. § 1446(b)(1).

## III.      BASIS FOR REMOVAL

5.      Pursuant to 28 U.S.C. §§ 902(a)(2) and 1441(a), venue is proper in the United States District Court for the District of New Mexico, as this is the District corresponding to and embracing the place where the State Court Action was pending.

6.      This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332 because (i) it is between "[c]itizens of different States" and (ii) the "matter in controversy exceeds the sums or value of $75,000, exclusive of interests and costs."

**A.  The Parties Are Diverse to One Another.**

7.      For diversity purposes, a person is a "citizen" of the state in which she or he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cr. 1983).  Residence is *prima facie* evidence of domicile. *State Farm Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

2

8.    For the purpose of determining diversity of citizenship of political subdivisions, they are regarded as citizens of their respective states. *Illinois v. City of Milwaukee,* 406 U.S. 91, 97, 92 S. Ct. 1385, 31 L. Ed. 2d 712 (1972); *Bullard v. City of Cisco, Texas,* 290 U.S. 179, 187, 54 S. Ct. 177, 78 L. Ed. 254 (1933).

9.    Accordingly, Plaintiff Village of Taos Ski Valley ("VTSV"), which is an incorporated municipality in Taos County, New Mexico (**See Exhibit A, Compl**, pg. 1), shall be regarded as a citizen of New Mexico.

10.    For purposes of diversity jurisdiction, a corporation is "a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1).

11.    Plaintiff Integrated Water Services, Inc. ("IWS") is a Colorado Corporation with its principal place of business in Colorado.  **See Exhibit A**, Compl, pg. 1.  For purposes of removal jurisdiction, IWS is not a citizen of New Mexico.

12.    Ovivo is and at all relevant times has been a Delaware corporation, with its principal place of business in Salt Lake City, Utah.  For purposes of removal jurisdiction, Ovivo is not a citizen of New Mexico.

13.    Upon information and belief, Liberty Mutual Insurance Company ("Liberty Mutual") is a Massachusetts Corporation with its headquarters and principal place of business in Boston, Massachusetts.  **See Exhibit A**, Compl, pg. 2). For purposes of removal jurisdiction, Liberty Mutual is not a citizen of New Mexico.

14.    Because of the foregoing, diversity of citizenship exists under 28 U.S.C. § 1332.

**B. Plaintiffs' Complaint Establishes the Requisite Minimum Amount in Controversy.**

15.    Under 28 U.S.C. §1441(a), "the amount in controversy is ordinarily determined by the allegations of the complaint, or, where they are not dispositive, by the allegations in the notice of removal." *Martin v. Franklin Capital Corp.*, 251 F.3d 1284, 1290 (10th Cir. 2001).  Typically,

the "notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014) (citing 28 U.S.C. § 1446(c)(2)(A)).

16.     To determine whether the amount in controversy requirement is met, the court may aggregate actual damages, punitive damages, attorney's fees, and statutorily imposed penalties, if any, but not interest or costs.  *See, e.g., Bell v. Preferred Life Assurance Soc'y*, 320 U.S. 238, 241 (1943) (amount in controversy requirement met if plaintiff "might recover" award of compensatory and punitive damages in excess of amount in controversy requirement); *Woodmen of World Life Ins. Soc'y v. Manganaro*, 342 F.3d 1213, 1217-18 (10th Cir. 2003) ("[c]onsideration of all types of monetary recovery sought by [plaintiff]," including compensatory damages, exemplary damages, punitive damages, statutory damages, attorneys' fees, "satisfied the jurisdictional amount")).

17.     In making a determination on the amount in controversy, the court also may rely upon, *inter alia*, (a) "the substance and nature of the injuries and damages described in the pleadings;" (b) "an estimate of the potential damages from the allegations in the complaint;" (c) "other documentation to provide a basis for determining the amount in controversy, such as interrogatories obtained in the state court before removal, affidavits, or other evidence submitted in federal court afterward"; and (d) "the plaintiff's proposed settlement amount if it appears to reflect a reasonable estimate of the plaintiff's claim."  *See McPhail v. Deere & Co.,* 529 F.3d 947, 956 (10th Cir. 2008); *Carrillo v. MCS Indus., Inc.*, No. CIV 12–0573 JB/WPL, 2012 WL 5378300 at *12 (D.N.M. Oct. 15, 2012); *Graelles v. Standard Fire Ins. Co.*, No. CIV 07-1054 MCA/RLP, 2008 WL 11320121 at *2 (D.N.M. Jan. 29, 2008).

18.     A defendant "is entitled to stay in federal court unless [the court] is 'legally certain' that less than $75,000 is at stake. If the amount is uncertain[,] then there is potential controversy, which is to say that at least $75,000 is in controversy in the case." *McPhail,* 529 F.3d at 954.  A defendant only needs to show that the amount in controversy "may" exceed $75,000. *Id.* at 953-54.

19.     Ovivo denies the validity and merit of the entirety of Plaintiffs' alleged claims, the legal theories upon which they are based, and the alleged claims for monetary and other relief that flow therefrom. However, for purposes of removal only, and without conceding that Plaintiffs are entitled to any amount whatsoever, a reasonable reading of the allegations as pled in this action by Plaintiffs exceeds $75,000, exclusive of costs and interest.

20.     Plaintiffs' Complaint does not allege a dollar figure for the total amount of claimed damages but references the fact underlying proposals for the goods and services at issue exceeded one million dollars.  In addition, Plaintiffs seek an assessment of treble damages under their Unfair Practices Claim, and their costs and attorneys' fees incurred in this matter.

21.     Here, Plaintiffs allege they did not receive the goods and services contracted for related to a wastewater treatment plant. **Exh. A**, Compl.  In addition to the damages referenced above, Plaintiffs seek $200 per day due to delay in completion of the work; costs incurred in correcting and modifying the wastewater treatment plant at issue; pre and post-judgment interest; and "such further relief as this Court deems just and proper." **Id**. By aggregating the amount of claimed damages and by considering the substance and nature of Plaintiffs' claimed damages, the Court may conclude Plaintiffs seek damages in excess of $75,000.

22.     In the instant case, the record and case law establish that the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

23.     For these reasons, this Court has original jurisdiction over this action and removal is proper.

### IV.     FILING OF REMOVAL PAPERS AND NOTICE TO ADVERSE PARTY AND STATE COURT

24.     As required by 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being promptly served upon counsel for Plaintiffs and a copy is being filed with the Clerk of the Eighth Judicial District Court of the State of New Mexico, County of Taos.  A true and correct copy of Ovivo's Notice to State Court of Removal of Action Under 28 U.S.C. §§ 1332, 1441, and 1446

(Diversity of Citizenship) filed in the Eighth Judicial District Court of the State of New Mexico, County of Taos, is attached hereto as **Exhibit B**.

25.     Pursuant to D.N.M. LR-CIV 81.1(a) of the Local Civil Rules of the United States District Court for the District of New Mexico, legible copies of records and proceedings from the state court action are being filed herewith.

## V.     ALL OTHER REMOVAL REQUIREMENTS ARE SATISFIED

26.     For purposes of removal based on diversity jurisdiction under 28 U.S.C. § 1332(a) and pursuant to 28 U.S.C. § 1446(b), all Defendants who have been properly joined and served must consent to removal.

27.     Defendant Liberty Mutual consents to removal and has executed the Consent to Removal attached as **Exhibit C**.

## VI.     CONCLUSION

28.     All procedural requirements for removal under 28 U.S.C. §§ 1441 and 1446 have been satisfied, and this case is hereby removed pursuant to the Court's original jurisdiction under 28 U.S.C. § 1332.

29.     Ovivo reserves all defenses to Plaintiffs' claims. Nothing in this Notice of Removal shall be interpreted as a waiver or relinquishment of any right to assert any defense or affirmative matter, including but not limited to (1) lack of jurisdiction; (2) improper venue; (3) insufficiency of process; (4) insufficiency of service of process; (5) improper joinder of claims and/or parties; (6) failure to state a claim; (7) failure to join an indispensable party or parties; or (8) any other pertinent defense available.

WHEREFORE, Ovivo respectfully requests that this case be entered upon the docket of the United States District Court for the District of New Mexico, pursuant to 28 U.S.C. §§ 1441 and 1446.

Respectfully submitted,

BUTT THORNTON & BAEHR

*/s/ Monica R. Garcia*
Monica R. Garcia
P.O. Box 3170
Albuquerque, NM 87190
Telephone: (505) 884-0777
Facsimile: (505) 889-8870
mrgarcia@btblaw.com
*Attorneys for Defendant Ovivo USA, LLC*


I HEREBY CERTIFY that on the 6th day of
April 2023, I filed the foregoing electronically
through the electronic filing system, which caused the
following parties or counsel to be served by
electronic means, as more fully reflected on the
Notice of Electronic Filing:

Sean Calvert – scalvert@hardhatlaw.net
*Attorneys for Plaintiff Integrated Water Services, Inc.*

Frank R. Coppler – fcoppler@coppler.com
John L. Appel – jappel@coppler.com
*Attorneys for Plaintiff Village of Taos Ski Valley*


*/s/ Monica R. Garcia*
Monica R. Garcia

The JS-44 civil cover sheet and information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, expect as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**1. (a) PLAINTIFFS**
      VILLAGE  OF TAOS SKI VALLEY and INTEGRATED WATER SERVICES, INC.
   (b) County of Residence of First Listed Plaintiff:  TAOS  COUNTY

   (EXCEPT IN  U.S. PLAINTIFF CASES)

**DEFENDANTS** OVIVO USA, LLC AND LIBERTY MUTUAL INSURANCE
County of Residence of First Listed Defendant: Salt Lake County, UT
               (IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
         TRACT OF LAND INVOLVED.

**(c)  ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
Sean Calvert
Calvert Menicucci, PC
8804 Washington St., NE, Suite E
Albuquerque, NM 87113
Phone: 505-247-9100
scalvert@hardhatlaw.net
*Attorneys for Integrated Water Services, Inc.*

and

Frank R. Coopler
John L. Appel
Coppler Law Firm, P.C.
645 Don Gasper Avenue
Santa Fe, NM 87505
Phone: 505-988-5656
Fax: 505-988-5704
fcoppler@coppler.com
jappel@coppler.com
*Attorneys for Village of Taos Ski Valley*

Butt Thornton & Baehr, P.C.
Monica R. Garcia, Esq.
4101 Indian School Rd. N.E. #300
Albuquerque, NM  87110
Telephone: 505- 884-0777
mrgarcia@btblaw.com
*Attorney for Defendant Ovivo USA, LLC*

**II.  BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1  U.S. Government
     Plaintiff

☐ 2  U.S. Government
     Defendant

☐ 3  Federal Question
     (U.S. Government Not a Party)

☒ 4  Diversity
     (Indicate Citizenship of parties
     in Item III)

**III.  CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)

(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)**

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110  Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610  Agriculture | ☐ 422  Appeal 28 USC 158 | ☐ 400  State Reapportionment |
| ☐ 120  Marine | ☐ 310  Airplane | ☐ 362  Personal Injury – Med. | ☐ 620  Other Food & Drug | | ☐ 410  Antitrust |
| ☐ 130  Miller Act | ☐ 315  Airplane Product |    Malpractice | ☐ 625  Drug Related Seizure | ☐ 423  Withdrawal | ☐ 430  Banks and Banking |
| ☐ 140  Negotiable Instrument |    Liability | ☐ 365  Personal Injury – |    of Property 21 USC |    28 USC 157 | ☐ 450  Commerce/ICC Rates/etc. |
| ☐ 150  Recovery of Overpayment | ☐ 320  Assault Libel & |    Product Liability |    881 | | ☐ 460  Deportation |
|    & Enforcement of |    Slander | ☐ 368  Asbestos Personal | ☐ 630  Liquor Laws | **PROPERTY RIGHTS** | ☐ 470  Racketeer Influenced and |
|    Judgment | ☐ 330  Federal Employers |    Injury Product Liability | ☐ 640  R.R. & Truck | ☐ 820  Copyrights |    Corrupt Organizations |
| ☐ 151  Medicare Act |    Liability | | ☐ 650  Airline Regs. | ☐ 830  Patent | ☐ 480  Consumer Credit |
| ☐ 152  Recovery of Defaulted | ☐ 340  Marine | **PERSONAL PROPERTY** | ☐ 660  Occupational | ☐ 840  Trademark | ☐ 480  Cable/Sat TV |
|    Student Loans | ☐ 345  Marine Product | ☐ 370  Other Fraud |    Safety/Heath | | ☐ 810  Selective Service |
|    (Excl. Veterans) |    Liability | ☐ 371  Truth in Lending | ☐ 690  Other | **SOCIAL SECURITY** | ☐ 850  Securities/Commodities/ |
| ☐ 153  Recovery of Overpayment | ☐ 350  Motor Vehicle | ☐ 380  Other Personal | | ☐ 861  HIA (1395 ff) |    Exchange |
|    of Veteran´s Benefits | ☐ 355  Motor Vehicle |    Property Damage | **LABOR** | ☐ 862  Black Lung (923) | ☐ 875  Customer Challenge |
| ☐ 160  Stockholders Suits |    Product Liability | ☐ 385  Property Damage | ☐ 710  Fair Labor Standards | ☐ 863  DIW C/DIW W |    12 USC 3410 |
| ☒ 190  Other Contract | ☐ 360  Other Personal Injury |    Product Liability |    Act |    (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 195  Contract Product Liability | | | ☐ 720  Labor/Mgmt Relations | ☐ 864  SSID Title XVI | ☐ 891  Agricultural Acts |
| ☐ 196  Franchise | | | ☐ 730  Labor/Mgmt Reporting | ☐ 865  RSI (405(g)) | ☐ 892  Economic Stabilization |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** |    & Disclosure Act | |    Act |
| ☐ 210 Land Condemnation | ☐ 441  Voting | ☐ 510  Motions to Vacate | ☐ 740  Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 893  Environmental Matters |
| ☐ 220  Foreclosure | ☐ 442  Employment |    Sentence | ☐ 790  Other Labor Litigation | ☐ 870  Taxes (U.S. Plaintiff | ☐ 894  Energy Allocation Act |
| ☐ 230  Rent Lease & | ☐ 443  Housing\ | **HABEAS CORPUS:** | ☐ 791  Empl Ret Inc. |    or Defendant) | ☐ 895  Freedom of Information |
|    Ejectment |    Accommodations | ☐ 530  General |    Security Act | ☐ 871  IRS – Third Party |    Act |
| ☐ 240  Torts to Land | ☐ 444  Welfare | ☐ 535  Death Penalty | |    26 USC 7609 | ☐ 900  Appeal of Fee Determination |
| ☐ 245  Tort Product Liability |    440 Other Civil Rights | ☐ 540  Mandamus & Other | | |    Under Equal Access to |
| ☐ 290  All other Real Property | | ☐ 550  Civil Rights | | |    Justice |
| | | ☐ 555  Prison Condition | | | ☐ 950  Constitutionality of |
| | | | | |    State Statutes |

**V. ORIGIN**      (PLACE AN "X" IN ONE BOX ONLY)

☐ 1  Original
    Proceeding

☒ 2  Removed from
    State Court

☐ 3  Remanded from
    Appellate Court

☐ 4  Reinstated or
    Reopened

Transferred from
☐ 5  another district
    (specify)

☐ 6  Multidistrict
    Litigation

Appeal to District
Judge from
☐ 7  Magistrate
    Judgment

**VI. CAUSE OF ACTION**

(Cite the U.S. Civil Statute under which you are filing.  (**Do not cite jurisdictional statutes unless diversity.**):
28 U.S.C. §1441 and 28 U.S.C. §1332

Brief description of cause: Damages related to contract

| **VII.** **REQUESTED IN**<br>**COMPLAINT:** | CHECK IF THIS IS A CLASS ACTION<br>☐   UNDER F.R.C.P. 23 | **DEMAND $** | CHECK YES only if demanded in Complaint<br>**JURY DEMAND:** YES ☐   NO ☒ |
|---|---|---|---|
| **VIII.** **RELATED CASES(S)**   (See instructions)<br>IF **ANY** | | JUDGE_____ | DOCKET NUMBER_____ |
| **DATE** | | **SIGNATURE OF ATTORNEY OF RECORD** | |
| April 6, 2023 | | /s/ Monica R. Garcia | |

FILED
8TH JUDICIAL DISTRICT COURT
TAOS COUNTY NM
FILED IN MY OFFICE
2/24/2023 9:40 AM
LAUREN M. FELTS-SALAZAR
DISTRICT COURT CLERK
NC

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT COURT

VILLAGE OF TAOS SKI VALLEY, a New
Mexico municipal corporation, and
INTEGRATED WATER SERVICES, INC.,
a Colorado corporation,

                Plaintiffs,

v.                                     D-820-CV-2023-00062

OVIVO USA, LLC, a Delaware
limited liability company, and
LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts
corporation,

                Defendants.

## COMPLAINT FOR BREACH OF CONTRACT, UNFAIR TRADE PRACTICES, ON PERFORMANCE BOND AND FOR BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

      COME NOW Plaintiffs Village of Taos Ski Valley ("VTSV") and Integrated Water Services, Inc. ("IWS"), by and through their undersigned counsel, and for their Complaint in this matter, state as follows:

      1.    VTSV is an incorporated municipality in Taos County, New Mexico.

      2.    IWS is a Colorado corporation having its principal place of business in Longmont, Colorado.

      3.    IWS is a contractor licensed by the State of New Mexico, Regulation and Licensing Department, Construction Industries Division under license number 91518.

**EXHIBIT A**

4.     Defendant Ovivo USA, LLC ("Ovivo") is, upon information and belief, a Delaware corporation having its principal place of business in Salt Lake City, Utah.

5.     Defendant Liberty Mutual Insurance Company ("Liberty Mutual") is, upon information and belief, a Massachusetts corporation providing insurance and surety services in the State of New Mexico.

6.     All of the allegations contained in this Complaint arise out of and concern the design, sale and construction of a public works project for VTSV in the County of Taos, New Mexico.

7.     This Court has jurisdiction as to the subject matter and parties to this litigation.

8.     Venue is proper with this Court.

<u>Factual Allegations</u>

9.     On or about November 29, 2016 VTSV published solicitation known as RFP#2017-04 Performance Based Procurement of MBR System Equipment and Materials for the Wastewater Treatment Plant Expansion Project ("RFP").

10.     Pursuant to the RFP proposals were to be received on December 21, 2016.

11.     Ovivo submitted a proposal in the amount of $1,102,647.00 for the base scope of the RFP and was selected by VTSV as the successful bidder.

12.     Pursuant to the terms of the RFP Ovivo's submission of a proposal constituted a representation by Ovivo that it had reviewed the bidding documents, that Ovivo had given the engineer for the project, FEI Engineers ("FEI"), written notice of all conflicts, errors, ambiguities and discrepancies and that the bidding documents were generally sufficient.

13.     Ovivo in its proposal represented that the Ovivo proposed system

**EXHIBIT A**

was designed to hydraulically and biologically handle the peak period flow of 0.44 million gallons per day ("MGD") for fifteen days, twice per year and meet the effluent concentrations specified by VTSV.

14.    On February 20, 2017 VTSV entered into a contract with Ovivo for the design and supply of improvements to and expansion of the existing wastewater treatment facility.  A copy of the February 20, 2017 contract is attached to this Complaint as Exhibit 1.

15.    On or about March 1, 2017 Ovivo and Liberty Mutual issued a Performance Bond for Procurement Contracts in the amount of $1,102,647.00. A copy of the Performance Bond is attached as Exhibit 2 to this Complaint.

16.    On January 13, 2019 Ovivo provided VTSV with Ovivo's technical proposal for a change in the design of the wastewater treatment system.

17.    The January 13, 2019 technical proposal from Ovivo provided that it was designed to handle a peak daily influent flow ("PDF or PPF") of 0.44 MGD for two consecutive weeks.

18.    In March, 2019 VTSV entered into Change Order No. 1 with Ovivo accepting Ovivo's technical proposal and increasing the contract price to $3,347,476.00 as a result of a change from an MBR system to a microBLOX MBR system.  A copy of Change Order No. 1 is attached as Exhibit 3 to this Complaint.

19.    In May, 2019 VTSV assigned its contract with Ovivo to IWS.

20.    On June 12, 2019 Liberty Mutual acknowledged and agreed to the assignment of the contract between VTSV and Ovivo and that IWS "shall have all the rights of the Buyer (VTSV) under the Performance Bond".

21.    The performance specifications incorporated into the contract with Ovivo provided that the MBR system would be capable of handling a PDF of

3

**EXHIBIT A**

0.44 MGD for fifteen consecutive days without loss of treatment efficiency or damage to the system.

22.    The performance specifications incorporated into the contract with Ovivo further provided that, provided the MBR system included provisions for Hot Retrieval, the MBR system would handle a PDF of 0.44 MGD with one membrane cassette out of service for a period of twenty-four (24) hours without loss in treatment efficiency or damage to the system.

23.    The MBR system supplied by Ovivo included provision for Hot Retrieval.

24.    The contract with Ovivo called for performance testing after the MBR system had been installed and fully commissioned as part of the acceptance of the wastewater treatment facility.

25.    The contract with Ovivo provided that if the MBR system did not meet the requirements of the performance test or failed to meet the performance requirements for the first year of operation that Ovivo would be responsible for complete removal and reinstallation of the membrane products that are not capable of meeting the specified performance requirements.

26.    VTSV issued the Notice to Proceed with the work on May 20, 2019, which pursuant to the timelines in the contract required the plant to be online no later than December 21, 2019 and substantially complete no later than February 19, 2020.

27.    The wastewater treatment plant was initially started up on December 19, 2019.

28.    As delivered and installed the wastewater treatment plant experienced high turbidity alarms almost immediately and required repeated unsuccessful attempts by Ovivo to make the plant compliant with the contract performance specifications, including replacing parts.

**EXHIBIT A**

28.    Ovivo continued to work on replacing parts and attempting to get the wastewater treatment plant operational throughout 2020 and 2021.

29.    Substantial completion of the plant was not issued for the wastewater treatment plant until March 18, 2021, more than a year after required by the contract.

30.    Pursuant to the terms of the contract with Ovivo damages as a result of delay in the completion of the work were set at $200 per day.

31.    The wastewater treatment plant has never been able to run both treatment trains supplied by Ovivo at any time since being installed.

32.    Ovivo has never performance tested the wastewater treatment plant in accordance with the requirements of the contract and the wastewater treatment plant has not proven that it can handle the influent flows required under the performance specifications and Ovivo's proposals.

33.    Pursuant to Section 8.01(C) of the General Conditions of the contract with Ovivo, after the material supplied by Ovivo had been incorporated into the project and tested VTSV or its engineer would make a final inspection for acceptance of the goods.

34.    VTSV has never inspected or accepted the goods provided by Ovivo.

35.    On September 20, 2021 IWS gave notice to Ovivo and Liberty Mutual of the default under the contract by Ovivo and demand under the performance bond.

36.    Neither Ovivo nor Liberty Mutual have commenced correction of the defaults or completion of the performance under the contract.

37.    On December 10, 2021 IWS notified Ovivo and Liberty Mutual that Ovivo's contract was terminated for failure to cure the default.

**EXHIBIT A**

38.    On May 31, 2022 Liberty Mutual denied the claim under the Performance Bond and refused to perform or pay for the repair and replacement of the wastewater treatment plant as required by the performance bond.

39.    As a result of Ovivo and Liberty Mutual's failure to correct, complete and test the wastewater treatment plant in accordance with the provisions of the contract, a temporary bypass wastewater treatment plant was required to ensure that the system did not fail and result in an effluent spill during the 2021/2022 Winter season.

40.    As a result of Ovivo and Liberty Mutual's failure to provide a working wastewater treatment system and to correct, complete and test the inadequate system provided, VTSV and IWS have incurred additional costs in correcting and modifying the plant.

<u>COUNT ONE</u>

<u>Breach of Contract</u>

41.    VTSV and IWS restate and incorporate herein the allegations contained in paragraphs 1 through 40 above as if restated in full.

42.    VTSV entered into a contract with Ovivo for the design and supply of goods for the wastewater treatment plant, which contract is attached to the Complaint as Exhibit 1.

43.    The performance bond issued by Ovivo and Liberty Mutual constitutes a contract between those parties and VTSV.

44.    VTSV assigned, with Ovivo and Liberty Mutual's assent, the contract and performance bond to IWS.

45.    VTSV remains an intended third-party beneficiary of the assigned contract.

46.    Ovivo has breached the terms of the contract by:

6

**EXHIBIT A**

a.   Failing to supply functional goods in accordance with the contract;

b.   Failing to adequately test the goods;

c.   Failing to meet the performance specifications of the contract;

d.   Failing to complete the delivery and startup of the goods within the times set forth in the contract; and

e.   Failing to repair or replace the goods in accordance with the terms of the contract.

47.   Ovivo and Liberty Mutual have breached the terms of the performance bond by:

a.   Failing to arrange for Ovivo to perform and complete the work under the contract;

b.   Failing to undertake performance and completion of the contract;

c.   Failing to obtain bids or proposals from qualified sellers to perform and complete the contract; or

d.   Failing to determine an amount sufficient to perform and complete the contract and tender the funds.

47.   Ovivo and Liberty Mutual's actions and failures to act constitute substantial and material breaches of the contracts.

48.   VTSV and IWS have been damaged as a result of the breach of the contracts by Ovivo and Liberty Mutual.

<u>COUNT TWO</u>

<u>UNFAIR TRADE PRACTICES</u>

49.   VTSV and IWS restate and incorporate herein the allegations contained in paragraphs 1 through 48 above as if restated in full.

**EXHIBIT A**

50.    Ovivo is engaged in the business of the design and sale of wastewater treatment systems in New Mexico and is therefore a person engaged in trade and commerce under N.M.S.A. 1978, §57-12-2(A) and (C).

51.    In connection with the sale of goods and services Ovivo engaged in unfair or deceptive trade practices under N.M.S.A. 1978, §57-12-2(D)(5) and (7), when it represented that the goods had particular performance characteristics which they do not possess.

52.    In connection with the sale of goods, Ovivo willfully made misrepresentations resulting in actual damages suffered by Plaintiffs, including a loss of money, compensable under N.M.S.A. 1978, §57-12-10(B).

53.    As a direct and proximate result of the unfair trade practices by Ovivo in connection with the sale of goods and services, Plaintiffs have suffered damages.

<u>COUNT THREE</u>

<u>ON PERFORMANCE BOND</u>

54.    VTSV and IWS restate and incorporate herein the allegations contained in paragraphs 1 through 53 above as if restated in full.

55.    The Performance Bond issued by Ovivo and Liberty Mutual is a valid and enforceable surety contract.

56.    IWS and/or VTSV are the actual and intended beneficiaries of the Performance Bond.

57.    IWS and VTSV are entitled to a claim against the Performance Bond according to the terms of the bond.

58.    Liberty Mutual's refusal to perform in accordance with the terms of the Performance Bond constitute a breach of the terms of that bond.

59.    As a direct and proximate result of Liberty Mutual's breach, IWS and/or VTSV have suffered damages.

**EXHIBIT A**

## COUNT FOUR

### BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

60.    VTSV and IWS restate and incorporate herein the allegations contained in paragraphs 1 through 59 above as if restated in full.

61.    The contract with Ovivo and the performance bond contained an implied duty of good faith and fair dealing that arises by virtue of New Mexico common law.

62.    Ovivo breached the duty of good faith and fair dealing by, among other things, failing to supply goods meeting the design requirements and attempting to hide its breach by failing to perform the required testing.

63.    Liberty Mutual breached the duty of good faith and fair dealing by among other things, failing to investigate and take any action under the bond upon notice of default.

64.    Ovivo and Liberty Mutual's breaches of their duties and responsibilities were in bad faith.

65.    As a direct and proximate result of Ovivo and Liberty Mutual's bad faith breach of the covenant of good faith and fair dealing, IWS and/or VTSV have suffered damages.

WHEREFORE, VTSV and IWS respectfully requests judgment be issued against Ovivo and Liberty Mutual as follows:

### On Counts One and Four

A.    For judgment against Ovivo and Liberty Mutual in an amount to be established at trial.

B.    For VTSV and IWS' costs and attorneys' fees incurred in this matter;

C.    For pre and post-judgment interest;

9

**EXHIBIT A**

D.    For such other and further relief as the Court deems just and proper

On Count Two

E.    For judgment against Ovivo in an amount to be established at trial.

F.    For treble damages;

G.    For VTSV and IWS' costs and attorneys' fees incurred in this matter;

H.    For pre and post-judgment interest;

I.    For such other and further relief as the Court deems just and proper;

On Count Three

J.    For judgment against Liberty Mutual in an amount to be established at trial;

K.    For VTSV and IWS' costs and attorneys' fees incurred in this matter;

L.    For pre and post-judgment interest;

M.    For such other and further relief as the Court deems just and proper.

**EXHIBIT A**

Respectfully submitted,

CALVERT MENICUCCI, PC

*/s/ Sean R. Calvert*
SEAN CALVERT
*Attorney for Plaintiff IWS*
8804 Washington St., NE, Suite E
Albuquerque, New Mexico 87113
(505) 247-9100
scalvert@hardhatlaw.net

and

COPPLER LAW FIRM, P.C
*Attorneys for Plaintiff Village of Taos*
    *Ski Valley*
645 Don Gaspar Avenue
Santa Fe, New Mexico 87505
505-988-5656
Fax:  505-988-5704

*/s/  John L. Appel*
Frank R. Coppler
John L. Appel
fcoppler@coppler.com
jappel@coppler.com

11

**EXHIBIT A**

## SECTION 00520
## AGREEMENT BETWEEN BUYER AND SELLER

### TABLE OF CONTENTS

Article 1 – GOODS AND SPECIAL SERVICES ........................................................................ 1

Article 2 – THE PROJECT ......................................................................................................... 1

Article 3 – ENGINEER .............................................................................................................. 2

Article 4 – POINT OF DESTINATION .................................................................................... 2

Article 5 – CONTRACT TIMES ................................................................................................ 2

Article 6 – CONTRACT PRICE ................................................................................................ 3

Article 7 – PAYMENT PROCEDURES .................................................................................... 3

Article 8 – INTEREST ................................................................................................................ 4

Article 9 – SELLER'S REPRESENTATIONS ......................................................................... 4

Article 10 – CONTRACT DOCUMENTS ................................................................................. 5

Article 11 – MISCELLANEOUS ............................................................................................... 6

EXHIBIT "1"

MBR System Procurement Bid Set - 11/28/2016
00520 – Agreement Between Buyer & Seller
Copyright © 2013 National Society of Professional Engineers for EJCDC. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents and has been
modified as necessary by FEI Engineers, Inc.   EJCDC retains all proprietary rights to these documents.
Page i

**EXHIBIT A**

This page intentionally blank.

00520 – Agreement Between Buyer & Seller
Copyright © 2013 National Society of Professional Engineers for EJCDC. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents and has been modified as necessary by FEI Engineers, Inc.   EJCDC retains all proprietary rights to these documents.

**EXHIBIT A**

THIS AGREEMENT is by and between    Village of Taos Ski Valley         ("Buyer") and

                              Ovivo USA LLC                          ("Seller").

Buyer and Seller hereby agree as follows:

## ARTICLE 1 – GOODS AND SPECIAL SERVICES

1.01    Seller shall furnish the Goods and Special Services as specified or indicated in the Contract Documents.  The Goods and Special Services to be furnished are described in Section 01110 Summary of Goods and Special Services, Section 01270 Definition of Schedule of Values, and as further specified and defined in Divisions 1 and 11 of the technical specifications.

## ARTICLE 2 – THE PROJECT

2.01    The Project, of which the Goods and Special Services may be the whole or only a part, is identified as follows:

   A.   Description of Project:

       1.   The project consists of improvements to and expansion of the existing wastewater treatment facility.  The project components will include the existing headworks, concrete equalization basin, WAS storage tanks, existing secondary treatment process building structure, process tankage and piping systems, disinfection system and outfall.  Work will include existing building system improvements including excavation, backfill, compaction and concrete footers, slabs and tankage for the a portion of the MBR system, MCC room, control room and bathroom, including heating and lighting systems; headworks improvements including installation of a 2 mm mechanical fine screen, influent channel and flume modifications, the MBR system materials and equipment, process piping, valves and ancillary equipment; chemical feed and storage systems necessary for the process treatment; removal and replacement of the existing WAS storage tanks, connection to the outfall pipe and new outfall structure, site access road construction, site drainage and erosion control, and all associated materials, equipment and appurtenances required for a completely functioning system as identified in the performance based Procurement Contract Documents.

       2.   The Work covered by this performance based Procurement includes supply and shipment of the complete MBR System.  The MBR system (along with ancillary processes, materials and components) will be off-loaded and installed by a Contractor under a separate Contract.

   B.   Work Covered by Contract Documents:

       1.   This Procurement is performance based. The Seller will be responsible for the fabrication, supply, shipment, off-loading recommendations and coordination,

EJCDC P-520, Agreement Between Buyer and Seller for Procurement Contracts.-Exhibit A-1
Copyright © 2010 National Society of Professional Engineers, American Council of Engineering Companies,
American Society of Civil Engineers, and Associated General Contractors of America. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents and has been
modified as necessary by FEI Engineers, Inc.  EJCDC retains all proprietary rights to these documents.

**EXHIBIT A**

installing Contractor coordination and installation inspection, operator training, startup and performance testing of the complete MBR System including all MBR secondary treatment process materials and equipment provided to meet the performance based requirements.  The Seller shall supply and deliver to the Village of Taos Ski Valley Wastewater Treatment Plant, 38 Ocean Boulevard, Village of Taos Ski Valley, New Mexico all equipment, appurtenances and associated materials required for a completely functioning system, as referenced in the Contract Documents.

## ARTICLE 3 – ENGINEER

3.01    The Contract Documents for the Goods and Special Services have been prepared by _____FEI Engineers, Inc.____ ("Engineer"), which is to act as Buyer's representative, assume all duties and responsibilities, and have the rights and authority assigned to Engineer in the Contract Documents in connection with Seller's furnishing of Goods and Special Services.

## ARTICLE 4 – POINT OF DESTINATION

4.01    The Point of Destination is designated as: 38 Ocean Boulevard, Taos Ski Valley, NM 87525.

## ARTICLE 5 – CONTRACT TIMES

5.01    Time of the Essence

    A.   All time limits for Milestones, if any, including the submittal of Shop Drawings and Samples, the delivery of Goods, and the furnishing of Special Services as stated in the Contract Documents, are of the essence of the Contract.

5.02    Milestones

    A.   *Date for Submittal of Shop Drawings and Samples:*  Seller shall submit all Shop Drawings and Samples required by the Contract Documents to Buyer for Engineer's review and approval on or before June 12, 2018.  It is the intent of the parties that (1) Engineer conduct such review and issue its approval, or a denial accompanied by substantive comments regarding information needed to gain approval, within 30 days of Seller's submittal of such Shop Drawings and Samples; and (2) resubmittals be limited whenever possible.  If more than one resubmittal is necessary for reasons not the fault and beyond the control of Seller, then Seller shall be entitled to seek appropriate relief under Paragraph 7.02.B of the General Conditions.

    B.   *Date for Delivery of Goods:* The Goods are to be delivered to the Point of Destination and ready for Buyer's receipt of delivery on (or within a period of 15 days prior to) November 27, 2018.

    C.   *Days for Furnishing Special Services:*  The furnishing of Special Services to Buyer that include installation, start up, and performance services will commence within

EJCDC P-520, Agreement Between Buyer and Seller for Procurement Contracts.-Exhibit A-1
Copyright © 2010 National Society of Professional Engineers, American Council of Engineering Companies,
American Society of Civil Engineers, and Associated General Contractors of America. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents and has been
modified as necessary by FEI Engineers, Inc.  EJCDC retains all proprietary rights to these documents.
Page 2 of 11

**EXHIBIT A**

120 days (June 2019) after Buyer's acknowledgement of receipt of delivery of the Goods, and shall be completed within 60 days (September 2019) thereafter.

5.03    Buyer's Final Inspection

A.    *Date for Final Inspection*:   Buyer shall make its final inspection of the Goods pursuant to Paragraph 8.01.C of the General Conditions on or before September 17, 2019.  This date shall be adjusted equitably if Seller fails to deliver the Goods or furnish Special Services in compliance with the Milestones established in Paragraphs 5.02.B and 5.02.C of this Agreement.

5.04    Liquidated Damages

A.    Buyer and Seller recognize that Buyer will suffer financial loss if the Goods are not delivered at the Point of Destination and ready for receipt of delivery by Buyer within the times specified in Paragraph 5.02 above, plus any extensions thereof allowed in accordance with Article 7 of the General Conditions.  The parties also recognize that the timely performance of services by others involved in the Project is materially dependent upon Seller's specific compliance with the requirements of Paragraph 5.02.   Further, they recognize the delays, expense, and difficulties involved in proving the actual loss suffered by Buyer if complete acceptable Goods are not delivered on time.  Accordingly, instead of requiring such proof, Buyer and Seller agree that as liquidated damages for delay (but not as a penalty) Seller shall pay Buyer $200 for each day that expires after the time specified in Paragraph 5.02.B for delivery of acceptable Goods.  Seller's liability for liquidated damages shall not exceed, in the aggregate, any amount more than fifteen (15%) of the total contract value stated in seller's bid for the equipment that is not delivered on time.  Seller shall not be liable for Liquidated Damages due to delays caused by Force Majeure events, nor delays caused by Buyer, including but not limited to late drawing approval, inspection delays, scope changes, etc.   Notwithstanding any other provision of the Agreement to the contrary, payment of liquidated damages shall be Seller's sole liability and Buyer's sole remedy for late delivery of the equipment; however, this limitation shall not affect or impair Buyer's rights and remedies under contract or law as to all other provisions of this Agreement Such remedies shall not be enforced ~~unless Buyer suffers an economic loss as a result of Seller's late delivery.~~ if separate and unrelated delays by other parties to the project that is the subject of this Agreement exceed Seller's delay.

## ARTICLE 6 – CONTRACT PRICE

6.01    Buyer shall pay Seller for furnishing the Goods and Special Services in accordance with the Contract Documents as follows:

A.    The prices stated in Seller's Bid, attached hereto as an exhibit.

## ARTICLE 7 – PAYMENT PROCEDURES

7.01    Submittal and Processing of Payment

MBR System Procurement Bid Set - 11/28/2016
EJCDC P-520, Agreement Between Buyer and Seller for Procurement Contracts.-Exhibit A-1
Copyright © 2010 National Society of Professional Engineers, American Council of Engineering Companies,
American Society of Civil Engineers, and Associated General Contractors of America. All rights reserved.
Users Demo Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents and has been
modified as necessary by FEI Engineers, Inc.   EJCDC retains all proprietary rights to these documents.
Page 3 of 11

**EXHIBIT A**

    A.  Seller shall submit Applications for Payment in accordance with Article 10 of the General Conditions.  Applications for Payment will be processed by Engineer as provided in the General Conditions.

7.02    Progress Payments; Retainage

    A.  Buyer shall make progress payments on account of the Contract Price on the basis of Seller's Applications for Payment as follows (refer to the attached MBR Procurement Schedule Gantt Chart):

        1.  Two percent (2%) upon Notice to Proceed.

        2.  Two percent (2%) upon completion of the 60% design milestone.

        3.  Three percent (3%) upon completion of the final design milestone.

        4.  Two percent (2%) upon delivery of all submittals

        5.  Three percent (3%) upon approval of all submittals.

        6.  Sixty eight percent (68%) upon delivery of goods to point of destination.

        7.  Ten percent (10%) upon successful start-up of the equipment (Start-up begins within 9 months from delivery).

        8.  Ten percent (10%) upon successful completion of the project performance testing (Not to exceed 2 months from successful start-up of the equipment).

7.03    Final Payment

    A.  Upon receipt of the final Application for Payment accompanied by Engineer's recommendation of payment, Buyer shall pay Seller the amount recommended by Engineer, less any sum Buyer is entitled to set off against Engineer's recommendation, including but not limited to liquidated damages.

## ARTICLE 8 – INTEREST

8.01    All monies not paid when due as provided in Article 10 of the General Conditions shall bear interest at the statutory rate.

## ARTICLE 9 – SELLER'S REPRESENTATIONS

9.01    In order to induce Buyer to enter into this Agreement, Seller makes the following representations:

    A.  Seller has examined and carefully studied the Contract Documents and the other related data identified in the Bidding Documents, as applicable to Seller's obligations identified in Article 1 above.

    B.  If required by the Bidding Documents to visit the Point of Destination and site where the Goods are to be installed or Special Services will be provided, or if, in

VTSV-16-0220                                   MBR System Procurement Bid Set - 11/28/2016
EJCDC P-520, Agreement Between Buyer and Seller for Procurement Contracts.-Exhibit A-1
Copyright © 2010 National Society of Professional Engineers, American Council of Engineering Companies,
American Society of Civil Engineers, and Associated General Contractors of America. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents and has been
modified as necessary by FEI Engineers, Inc.   EJCDC retains all proprietary rights to these documents.
Page 4 of 11

**EXHIBIT A**

Seller's judgment, any local condition may affect cost, progress, or the furnishing of the Goods and Special Services, Seller has visited the Point of Destination and site where the Goods are to be installed or Special Services will be provided and become familiar with and is satisfied as to the observable local conditions that may affect cost, progress, and the furnishing of the Goods and Special Services.

C. Seller is familiar with and is satisfied as to all Laws and Regulations that may affect cost, progress, and the furnishing of the Goods and Special Services.

D. Seller has carefully studied, considered, and correlated the information known to Seller; information commonly known to sellers of similar goods doing business in the locality of the Point of Destination and the site where the Goods will be installed or where Special Services will be provided; information and observations obtained from Seller's visits, if any, to the Point of Destination and site where the Goods are to be installed or Services will be provided; and any reports and drawings identified in the Bidding Documents regarding the Point of Destination and the site where the Goods will be installed or where Special Services will be provided, with respect to the effect of such information, observations, and documents on the cost, progress, and performance of Seller's obligations under the Contract Documents.

E. Seller has given Engineer written notice of all conflicts, errors, ambiguities, or discrepancies that Seller has discovered in the Contract Documents, and the written resolution (if any) thereof by Engineer is acceptable to Seller.

F. The Contract Documents are generally sufficient to indicate and convey understanding of all terms and conditions for furnishing Goods and Special Services.

## ARTICLE 10 – CONTRACT DOCUMENTS

10.01 Contents

A. The Contract Documents consist of the following:

1. This Agreement (pages 1 to 8, inclusive).

2. Performance bond (pages 1 to 6, inclusive).

3. Payment bond (pages 1 to 6, inclusive).

4. Other bonds.

5. _____ (pages _____ to _____, inclusive).

6. General Conditions (pages 1 to 34, inclusive).

7. Supplementary Conditions (pages 1 to 4, inclusive).

8. Specifications as listed in the table of contents of the Project Manual.

9. Drawings, consisting of a cover sheet and sheets numbered_____ through ____, inclusive, with each sheet bearing the following general title: _____.

10. Addenda (numbers 1 to 2, inclusive).

EJCDC P-520, Agreement Between Buyer and Seller for Procurement Contracts.-Exhibit A-1
Copyright © 2010 National Society of Professional Engineers, American Council of Engineering Companies,
American Society of Civil Engineers, and Associated General Contractors of America. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents and has been
modified as necessary by FEI Engineers, Inc.   EJCDC retains all proprietary rights to these documents.

**EXHIBIT A**

11. Exhibits to this Agreement (enumerated as follows):

    a. Exhibit A-1 to Agreement between Buyer and Seller dated         , Assignment of Contract; Consent to Assignment; and Acceptance of Assignment.

    b. Exhibit A-2 to Agreement between Buyer and Seller dated         , Agreement to Assignment by Seller's Surety.

    c. Seller's Bid, solely as to the prices set forth therein (pages     to    , inclusive);

    d. Documentation submitted by Seller prior to Notice of Award (pages \_\_\_\_\_ to \_\_\_\_\_, inclusive);

12. The following which may be delivered or issued on or after the Effective Date of the Agreement and are not attached hereto:

    a. Notice to Proceed;

    b. Change Order(s);

    c. Work Change Directive(s).

B. The documents listed in Paragraph 10.01.A are attached to this Agreement (except as expressly noted otherwise above).

C. There are no Contract Documents other than those listed above in this Article 10.

D. The Contract Documents may only be amended, or supplemented as provided in Paragraph 3.04 of the General Conditions.

## ARTICLE 11 – MISCELLANEOUS

11.01  Terms

A. Terms used in this Agreement will have the meanings indicated in the General Conditions and the Supplementary Conditions.

11.02  Assignment of Contract

A. Buyer has the right to assign this Contract for furnishing Goods and Special Services, but only to a person or entity with sufficient ability to satisfy all of Buyer's obligations under this Contract, and Seller hereby consents to such assignment. Forms documenting the assignment of the Contract, and consent of Seller's surety to the assignment, have been executed by Buyer, Seller, and Seller's surety, and are attached as exhibits to this Agreement.

1. The Contract will be executed in the name of Buyer initially, and will be assigned to a construction contractor designated by Buyer. Such construction contractor's responsibilities will include the installation of the Goods. The assignment will occur on the effective date of the agreement between Buyer and the construction contractor, which is expected to occur on or about  April 11,

VTSV-16-0220                           MBR System Procurement Bid Set - 11/28/2016
EJCDC P-520, Agreement Between Buyer and Seller for Procurement Contracts.-Exhibit A-1
Copyright © 2010 National Society of Professional Engineers, American Council of Engineering Companies,
American Society of Civil Engineers, and Associated General Contractors of America. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents and has been
modified as necessary by FEI Engineers, Inc.   EJCDC retains all proprietary rights to these documents.
Page 6 of 11

## EXHIBIT A

2018 . As of the date of acceptance of assignment by the construction contractor, all references in the Contract Documents to Buyer shall mean the designated construction contractor.

2. The assignment of the Contract shall relieve the assignor from all further obligations and liabilities under this Contract. After assignment, Seller shall become a subcontractor or supplier to the assignee and, except as noted herein, all rights, duties, and obligations of Buyer under the Contract shall become the rights, duties, and obligations of the assignee.

3. After assignment:

   a. All performance warranties, guarantees, and indemnifications required by the Contract Documents will continue to run for the benefit of assignor and, in addition, for the benefit of the assignee. However, if assignor and assignee make the same warranty or guarantee claim, then Seller shall only be liable once for such claim.

   b. Except as provided in this Paragraph 11.02.A.3.b, all rights, duties, and obligations of Engineer to assignee and Seller under this Contract will cease.

      1) Engineer will review Seller's Applications for Payment and make recommendations to assignee for payments as provided in Paragraphs 10.02 and 10.06 of the General Conditions.

      2) Upon the written request of either the assignee or Seller, Engineer will issue with reasonable promptness clarifications or interpretations of the Contract Documents pursuant to the terms of Paragraph 9.02.A of the General Conditions.

B. No other assignment by a party hereto of any rights under or interests in the Contract Documents will be binding on another party hereto without the written consent of the party sought to be bound. Specifically but without limitation, moneys that may become due and moneys that are due may not be assigned without such consent (except to the extent that the effect of this restriction may be limited by Laws and Regulations). Unless specifically stated to the contrary in any written consent to such an assignment, such an assignment will not release or discharge the assignor from any duty or responsibility under the Contract Documents.

11.03 Successors and Assigns

A. Buyer and Seller each binds itself, its partners, successors, assigns, and legal representatives to the other party hereto, its partners, successors, assigns, and legal representatives in respect to all covenants, agreements, and obligations contained in the Contract Documents.

11.04 Severability

MBR System Procurement Bid Set - 11/28/2016
EJCDC P-520, Agreement Between Buyer and Seller for Procurement Contracts.-Exhibit A-1
Copyright © 2010 National Society of Professional Engineers, American Council of Engineering Companies,
American Society of Civil Engineers, and Associated General Contractors of America. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents and has been
modified as necessary by FEI Engineers, Inc.  EJCDC retains all proprietary rights to these documents.

**EXHIBIT A**

A.  Any provision or part of the Contract Documents held to be void or unenforceable under any Law or Regulation shall be deemed stricken, and all remaining provisions shall continue to be valid and binding upon Buyer and Seller.  The Contract Documents shall be reformed to replace such stricken provision or part thereof with a valid and enforceable provision that comes as close as possible to expressing the intention of the stricken provision.

11.05  Seller's Certifications

A.  Seller certifies that it has not engaged in corrupt, fraudulent, collusive, or coercive practices in competing for or in executing the Contract.  For the purposes of this Paragraph 11.05:

1.  "corrupt practice" means the offering, giving, receiving, or soliciting of any thing of value likely to influence the action of a public official in the bidding process or in the Contract execution;

2.  "fraudulent practice" means an intentional misrepresentation of facts made (a) to influence the bidding process or the execution of the Contract to the detriment of Buyer, (b) to establish Bid or Contract prices at artificial non-competitive levels, or (c) to deprive Buyer of the benefits of free and open competition;

3.  "collusive practice" means a scheme or arrangement between two or more Bidders, with or without the knowledge of Buyer, a purpose of which is to establish Bid prices at artificial, non-competitive levels; and

4.  "coercive practice" means harming or threatening to harm, directly or indirectly, persons or their property to influence their participation in the bidding process or affect the execution of the Contract.

11.06  Limitations

A.  Buyer and Seller waive against each other, and against the other's officers, directors, members, partners, employees, agents, consultants, and subcontractors, any and all claims for or entitlement to incidental, indirect, or consequential damages arising out of, resulting from, or related to the Contract.  Upon assignment the terms of this Paragraph 11.06.A shall be binding upon the assignee with respect to Seller and assignor.  To the extent permissible by applicable law, Seller shall have no further liability in connection with this Agreement in excess of the cost of correcting any defects, or in the absence of any defect, in excess of the value of this Agreement. The terms of this mutual waiver do not apply to or limit any claim by either Buyer or Seller against the other based on any of the following: ((a) costs, losses, or damages attributable to personal or bodily injury, sickness, disease, or death, or to injury to or destruction of the tangible property of others, or (b) intentional or reckless wrongful conduct.

MBR System Procurement Bid Set - 11/28/2016
EJCDC P-520, Agreement Between Buyer and Seller for Procurement Contracts.-Exhibit A-1
Copyright © 2010 National Society of Professional Engineers, American Council of Engineering Companies,
American Society of Civil Engineers, and Associated General Contractors of America. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents and has been
modified as necessary by FEI Engineers, Inc.  EJCDC retains all proprietary rights to these documents.
Page 8 of 11

**EXHIBIT A**

11.07   Other Provisions:

Bonds

In no event shall Seller be obligated to provide a bond for which the value exceeds the
Agreement price, nor a duration which exceeds the first twenty four (24) months
of the warranty period.



EJCDC P-520, Agreement Between Buyer and Seller for Procurement Contracts.-Exhibit A-I
Copyright © 2010 National Society of Professional Engineers, American Council of Engineering Companies,
American Society of Civil Engineers, and Associated General Contractors of America. All rights reserved.
From User Note: This document was developed based on EJCDC Standard Even Design and Construction Related Documents and has been
modified as necessary by FEI Engineers, Inc.   EJCDC retains all proprietary rights to these documents.

**EXHIBIT A**

IN WITNESS WHEREOF, Buyer and Seller have signed this Agreement.  Counterparts have
been delivered to Buyer and Seller.  All portions of the Contract Documents have been signed or
identified by Buyer and Seller or on their behalf.

This Agreement will be effective on *20 Feb 2017* (which is the Effective Date
of the Agreement).

Buyer:   Village of Taos Ski Valley          Seller:   Ovivo USA LLC

By: _____               By: _____

[Corporate Seal]                           [Corporate Seal]

Attest: *Alison M. Wooldridge*             Attest: _____ *Jeff Scroger*

Address for giving notice:                 Address for giving notice:

*P.O. Box 100*                             *4246 Riverboat Rd., Suite 300*

*Taos Ski Valley, NM 87525*                *Salt Lake City, UT  84123*


(If Buyer is a corporation, attach evidence of      Agent for service of process:

authority to sign.  If Buyer is a public body,      *Corporation Service Company*

attach evidence of authority to sign and resolution *2711 Centerville Rd., Suite 400*

or other documents authorizing execution of         *Wilmington,  DE    19808*

Buyer-Seller Agreement.)                            *302-636-5401*

                                                   (If Seller is a corporation or a partnership,
                                                   attach evidence of authority to sign.)


Designated Representative                   Designated Representative

Name: ___Mark G. Fratrick___               Name: *Valere Morissette*

Title: __Village Administrator__           Title: *Vice President*

Address: *PO Box 100 TSV NM 87525*         Address: *4246 Riverboat Rd, Suite 300*
                                                    *Salt Lake City 84123*
Phone: *575-776-8220*                      Phone: *801-931-3000*

Facsimile: *575-776-1145*                  Facsimile: *801-931-3080*

EJCDC P-520, Agreement Between Buyer and Seller for Procurement Contracts.-Exhibit A-1
Copyright © 2010 National Society of Professional Engineers, American Council of Engineering Companies,
American Society of Civil Engineers, and Associated General Contractors of America. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents and has been
modified as necessary by FEI Engineers, Inc.   EJCDC retains all proprietary rights to these documents.

**EXHIBIT A**

# SECTION 00610
## PERFORMANCE BOND FOR PROCUREMENT CONTRACTS

Any singular reference to Seller, Surety, Buyer, or other party shall be considered plural where applicable.

SELLER *(name and address)*:

Ovivo USA, LLC

4246 Riverboat Road, Ste. 300, Salt Lake City, UT 84123

SURETY *(name and address of principal place of business)*:

Liberty Mutual Insurance Company

175 Berkeley Street, Boston, MA 02116  (617) 357-9500

BUYER *(name and address)*:
Village of Taos Ski Valley

7 Firehouse Road, P.O. Box 100, Taos Ski Valley, NM 87525

## CONTRACT
Effective Date:

Amount:            $ 1,102,647.00 (One Million One Hundred Two Thousand Six Hundred Forty Seven and No/100 Dollars)
Description *(Name and location)*:

Wastewater Treatment Plant Improvements

## BOND
Bond Number:       674027110

Date:
*(not earlier than Contract date)*

Amount:            $ 1,102,647.00 (One Million One Hundred Two Thousand Six Hundred Forty Seven and No/100 Dollars)
Modifications to this Bond Form:

N/A

## EXHIBIT "2"

**EXHIBIT A**

Surety and Seller, intending to be legally bound hereby, subject to the terms set forth below, do each cause this Performance Bond to be duly executed on its behalf by its authorized officer, agent, or representative.

**SELLER**

Ovivo USA, LLC
Seller's Name

By: _____
      Signature

Date: _____3 / 1 / 2017_____

Print Name: _Robert R. Palmer_

Title: _Vice President_

Address: 4246 Riverboat Road, Ste. 300

_____ Salt Lake City, UT 84123

Phone: (801) 931-3000

Email: _____

SEAL



**SURETY**

Liberty Mutual Insurance Company
Surety's Name

By: _____
      Signature

Date: _____

Print Name: Rebecca S. Leal

Title: Attorney-In-Fact
          (Attach Power of Attorney)

Address: 444 W. 47th Street, Suite 900

_____ Kansas City, MO 64112-1906

Phone: (816) 960-9000

Email: rleal@lockton.com

SEAL

VTSV-16-0220                                         MBR System Procurement Bid Set - 11/28/2016
00610 – Performance Bond.
Copyright © 2013 National Society of Professional Engineers for EJCDC. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents, and has been
modified as necessary by FEI Engineers, Inc.  EJCDC retains all proprietary rights to these documents.
Page 2 of 6

**EXHIBIT A**

1. Seller and Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to Buyer for the performance of the Contract, which is incorporated herein by reference.  For purposes of this bond, Buyer means Buyer's assigns, if and when Buyer has assigned the Contract.

2. If Seller performs the Contract, Surety and Seller have no obligation under this Bond, except to participate in conferences as provided in Paragraph 3.1.

3. If there is no Buyer Default, Surety's obligation under this Bond shall arise after:

   3.1. Buyer has notified Seller and Surety pursuant to Paragraph 10 that Buyer is considering declaring a Seller Default and has requested and attempted to arrange a conference with Seller and Surety to be held not later than 15 days after receipt of such notice to discuss methods of performing the Contract.  (If Buyer, Seller, and Surety agree, Seller shall be allowed a reasonable time to perform the Contract, but such an agreement shall not waive Buyer's right, if any, subsequently to declare a Seller Default); and

   3.2. Buyer has declared a Seller Default and formally terminated Seller's right to complete the Contract.  Such Seller Default shall not be declared earlier than 20 days after Seller and Surety have received notice as provided in Paragraph 3.1; and

   3.3. Buyer has agreed to pay the Balance of the Contract Price to:

      a. Surety in accordance with the terms of the Contract; or

      b. Another seller selected pursuant to Paragraph 4.3 to perform the Contract.

4. When Buyer has satisfied the conditions of Paragraph 3, Surety shall promptly and at Surety's expense take one of the following actions:

   4.1. Arrange for Seller, with consent of Buyer, to perform and complete the Contract; or

   4.2. Undertake to perform and complete the Contract itself, through its agents or through independent contractors; or

   4.3. Obtain bids or negotiated proposals from qualified sellers acceptable to Buyer for a contract for performance and completion of the Contract, arrange for a contract to be prepared for execution by Buyer and a seller selected with Buyer's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the Bonds issued on the Contract, and pay to Buyer the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by Buyer resulting from Seller Default; or

00610 – Performance Bond.
Copyright © 2013 National Society of Professional Engineers for EJCDC. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents, and has been modified as necessary by FEI Engineers, Inc.  EJCDC retains all proprietary rights to these documents.

**EXHIBIT A**

4.4. Waive its right to perform and complete, arrange for completion, or obtain a new seller, and with reasonable promptness under the circumstances, either:

    a.  determine the amount for which it may be liable to Buyer and, as soon as practicable after the amount is determined, tender payment therefor to Buyer; or

    b.  deny liability in whole or in part and notify Buyer citing reasons therefor.

5. If Surety does not proceed as provided in Paragraph 4 with reasonable promptness, Surety shall be deemed to be in default on this Bond 15 days after receipt of an additional written notice from Buyer to Surety demanding that Surety perform its obligations under this Bond, and Buyer shall be entitled to enforce any remedy available to Buyer. If Surety proceeds as provided in paragraph 4.4, and Buyer refuses the payment tendered or Surety has denied liability, in whole or in part, without further notice Buyer shall be entitled to enforce any remedy available to Buyer.

6. After Buyer has terminated Seller's right to complete the Contract, and if Surety elects to act under Paragraph 4.1, 4.2, or 4.3, then the responsibilities of Surety to Buyer shall not be greater than those of Seller under the Contract, and the responsibilities of Buyer to Surety shall not be greater than those of Buyer under the Contract. To a limit of the amount of this Bond, but subject to commitment by Buyer of the Balance of the Contract Price to mitigation of costs and damages on the Contract, Surety is obligated without duplication for:

6.1. the responsibilities of Seller for correction or replacement of defective Goods and Special Services and completion of the Contract;

6.2. Additional legal, design professional, and delay costs resulting from Seller's Default, and resulting from the actions of or failure to act of Surety under Paragraph 4; and

6.3. Liquidated damages, or if no liquidated damages are specified in the Contract, actual damages caused by delayed performance or non-performance of Seller.

7. Surety shall not be liable to Buyer or others for obligations of Seller that are unrelated to the Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than Buyer or its heirs, executors, administrators, successors, or assigns.

8. Surety hereby waives notice of any change, including changes of time, to the Contract or to related subcontracts, purchase orders and other obligations.

9. Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location of the Point of Destination, and shall be instituted within two years after Seller Default or within two years after Seller ceased working or within two years after Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If

---

MBR System Procurement Bid Set - 11/28/2016
00610 – Performance Bond.
Copyright © 2013 National Society of Professional Engineers for EJCDC. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents, and has been modified as necessary by FEI Engineers, Inc. EJCDC retains all proprietary rights to these documents.

**EXHIBIT A**

the provisions of this paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

10. Notice to Surety, Buyer or Seller shall be mailed or delivered to the address shown on the signature page.

11. When this Bond has been furnished to comply with a statutory or other legal requirement in the location of the Point of Destination, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein.  The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

12. Definitions.

   12.1. *Balance of the Contract Price:* The total amount payable by Buyer to Seller under the Contract after all proper adjustments have been made, including allowance to Seller of any amounts received or to be received by Buyer in settlement of insurance or other Claims for damages to which Seller is entitled, reduced by all valid and proper payments made to or on behalf of Seller under the Contract.

   12.2. *Contract:* The agreement between Buyer and Seller identified on the signature page, including all Contract Documents and changes thereto.

   12.3. *Seller Default:* Failure of Seller, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Contract.

   12.4. *Buyer Default:* Failure of Buyer, which has neither been remedied nor waived, to pay Seller as required by the Contract or to perform and complete or comply with the other terms thereof.

00610 – Performance Bond.
Copyright © 2013 National Society of Professional Engineers for EJCDC. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents, and has been modified as necessary by FEI Engineers, Inc.   EJCDC retains all proprietary rights to these documents.

**EXHIBIT A**

**THIS POWER OF ATTORNEY IS NOT VALID UNLESS IT IS PRINTED ON RED BACKGROUND.**
This Power of Attorney limits the acts of those named herein, and they have no authority to bind the Company except in the manner and to the extent herein stated.

Certificate No. 7578720

Liberty Mutual Insurance Company
The Ohio Casualty Insurance Company        West American Insurance Company

## POWER OF ATTORNEY

KNOWN ALL PERSONS BY THESE PRESENTS: That The Ohio Casualty Insurance Company is a corporation duly organized under the laws of the State of New Hampshire, that Liberty Mutual Insurance Company is a corporation duly organized under the laws of the State of Massachusetts, and West American Insurance Company is a corporation duly organized under the laws of the State of Indiana (herein collectively called the "Companies"), pursuant to and by authority herein set forth, does hereby name, constitute and appoint, C. Stephens Griggs; Charissa D. Lecuyer; Charles R. Teter, III; Christy M. Braile; Debra J. Scarborough; Evan D. Sizemore; Jeffrey C. Carey; Larissa Smith; Laura M. Buhrmester; Mary T. Flanigan; Megan L. Burns-Hasty; Patrick T. Pribyl; Rebecca S. Leal; Tahitia M. Fry

all of the city of _Kansas City_ , state of _MO_ each individually if there be more than one named, its true and lawful attorney-in-fact to make, execute, seal, acknowledge and deliver, for and on its behalf as surety and as its act and deed, any and all undertakings, bonds, recognizances and other surety obligations, in pursuance of these presents and shall be as binding upon the Companies as if they have been duly signed by the president and attested by the secretary of the Companies in their own proper persons.

IN WITNESS WHEREOF, this Power of Attorney has been subscribed by an authorized officer or official of the Companies and the corporate seals of the Companies have been affixed thereto this _22nd_ day of _December_ , _2016_ .



The Ohio Casualty Insurance Company
Liberty Mutual Insurance Company
West American Insurance Company

By: _David M. Carey_
David M. Carey, Assistant Secretary

STATE OF PENNSYLVANIA
COUNTY OF MONTGOMERY        ss

On this _22nd_ day of _December_ , _2016_ , before me personally appeared David M. Carey, who acknowledged himself to be the Assistant Secretary of Liberty Mutual Insurance Company, The Ohio Casualty Company, and West American Insurance Company, and that he, as such, being authorized so to do, execute the foregoing instrument for the purposes therein contained by signing on behalf of the corporations by himself as a duly authorized officer.

IN WITNESS WHEREOF, I have hereunto subscribed my name and affixed my notarial seal at King of Prussia, Pennsylvania, on the day and year first above written.



COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Teresa Pastella, Notary Public
Upper Merion Twp., Montgomery County
My Commission Expires March 28, 2017
Member, Pennsylvania Association of Notaries

By: _Teresa Pastella_
Teresa Pastella, Notary Public

This Power of Attorney is made and executed pursuant to and by authority of the following By-laws and Authorizations of The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company which resolutions are now in full force and effect reading as follows:

**ARTICLE IV – OFFICERS** – Section 12. Power of Attorney. Any officer or other official of the Corporation authorized for that purpose in writing by the Chairman or the President, and subject to such limitation as the Chairman or the President may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Corporation to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact, subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Corporation by their signature and execution of any such instruments and to attach thereto the seal of the Corporation. When so executed, such instruments shall be as binding as if signed by the President and attested to by the Secretary. Any power or authority granted to any representative or attorney-in-fact under the provisions of this article may be revoked at any time by the Board, the Chairman, the President or by the officer or officers granting such power or authority.

**ARTICLE XIII** – Execution of Contracts – SECTION 5. Surety Bonds and Undertakings. Any officer of the Company authorized for that purpose in writing by the chairman or the president, and subject to such limitations as the chairman or the president may prescribe, shall appoint such attorneys-in-fact, as may be necessary to act in behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations. Such attorneys-in-fact subject to the limitations set forth in their respective powers of attorney, shall have full power to bind the Company by their signature and execution of any such instruments and to attach thereto the seal of the Company. When so executed such instruments shall be as binding as if signed by the president and attested by the secretary.

**Certificate of Designation** – The President of the Company, acting pursuant to the Bylaws of the Company, authorizes David M. Carey, Assistant Secretary to appoint such attorneys-in-fact as may be necessary to act on behalf of the Company to make, execute, seal, acknowledge and deliver as surety any and all undertakings, bonds, recognizances and other surety obligations.

**Authorization** – By unanimous consent of the Company's Board of Directors, the Company consents that facsimile or mechanically reproduced signature of any assistant secretary of the Company, wherever appearing upon a certified copy of any power of attorney issued by the Company in connection with surety bonds, shall be valid and binding upon the Company with the same force and effect as though manually affixed.

I, Renee C. Llewellyn, the undersigned, Assistant Secretary, The Ohio Casualty Insurance Company, Liberty Mutual Insurance Company, and West American Insurance Company do hereby certify that the original power of attorney of which the foregoing is a full, true and correct copy of the Power of Attorney executed by said Companies, is in full force and effect and has not been revoked.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the seals of said Companies this _____ day of _____, 20_____ .



By: _Renee C. Llewellyn_
Renee C. Llewellyn, Assistant Secretary

*(left margin:)* Not valid for mortgage, note, loan, letter of credit, currency rate, interest rate or residual value guarantees.

*(right margin:)* To confirm the validity of this Power of Attorney call 1-610-832-8240 between 9:00 am and 4:30 pm EST on any business day.

LMS_12873_082016

597 of 1000

## EXHIBIT A

## C-941 – CHANGE ORDER

### Change Order No. ___1___

| | |
|---|---|
| Owner: | Village of Taos Ski Valley |
| Contractor: | Ovivo USA LLC. |
| Engineer: | Alan Plummer Associates |
| Project: | Wastewater Treatment Plant Expansion |

The Contract is modified as follows upon execution of this Change Order.

Description:
Scope Change from MBR system to microBLOX MBR system

Attachments:
Ovivo Change Order #1 Technical Proposal; Equipment Delivery Date Commitment

| CHANGE IN CONTRACT PRICE | CHANGE IN CONTRACT TIMES [note changes in Milestones if applicable] |
|---|---|
| Original Contract Price: | Original Contract Times: _____ |
| | Substantial Completion: _____ |
| $ 1,048,891.78 | Ready for Final Payment: _____ calendar days or dates |
| ☐ Increase ☐ Decrease from previously approved Change Orders No. _____ to No. | [Increase] [Decrease] from previously approved Change Orders No. _____ to No. _____: |
| | Substantial Completion: _____ |
| $ NA | Ready for Final Payment: _____ calendar days |
| Contract Price prior to this Change Order: | Contract Times prior to this Change Order: Substantial Completion: _____ |
| $ 1,048,891.78 | Ready for Final Payment: _____ calendar days or dates |
| Increase of this Change Order: | [Increase] [Decrease] of this Change Order: |
| | Substantial Completion: _____ |
| $ 2,298,584.22 | Ready for Final Payment: _____ calendar days or dates |
| Contract Price incorporating this Change Order: | Contract Times with all approved Change Orders: Equipment Delivery:  20 Weeks from Submittal Approval |
| $ 3,347,476.00 | Ready for Final Payment: Per Contract Terms calendar days or dates |

VTSV-0262   Page - 1   March 2019
EJCDC® C-941, Change Order.
Copyright © 2013 National Society of Professional Engineers for EJCDC. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents, and has been modified as necessary by Alan Plummer Associates.   EJCDC retains all proprietary rights to these documents.

EXHIBIT "3"

**EXHIBIT A**

**RECOMMENDED:**

By: _____
Engineer (Authorized Signature)

Print Name: Patrick O'Brien

Title: Principal

Date: 03/07/19

**ACCEPTED:**

By: _____
Owner (Authorized Signature)

Print Name: Christof Brownell

Title: Mayor

Date: 03/18/19

**RECEIVED:**

By: _____
Contractor (Authorized Signature)

Print Name: Hiren Trivedi

Title: Managing Director, Ovivo USA LLC

Date: 02-07-2019

**APPROVED:**

By: _____
Funding Agency (Authorized Signature)

Print Name: _____

Title: _____

Date: _____

Copyright © 2013 National Society of Professional Engineers for EJCDC. All rights reserved.
Note: This document was developed based on EJCDC Standard Form Design and Construction Related Documents, and has been modified as necessary by Alan Plummer Associates. EJCDC retains all proprietary rights to these documents.

**EXHIBIT A**

FILED
8TH JUDICIAL DISTRICT COURT
TAOS COUNTY NM
FILED IN MY OFFICE
2/27/2023 10:06 AM
LAUREN M. FELTS-SALAZAR
DISTRICT COURT CLERK
BLK

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT COURT

VILLAGE OF TAOS SKI VALLEY, a New
Mexico municipal corporation, and
INTEGRATED WATER SERVICES, INC.,
a Colorado corporation,

        Plaintiffs,

    vs.

OVIVO USA, LLC, a Delaware limited
liability company, and LIBERTY MUTUAL
INSURANCE COMPANY, a Massachusetts
corporation,

        Defendants.

**D-820-CV-2023-00062**

## ENTRY OF APPEARANCE

COMES NOW Coppler Law Firm, P.C. (Gerald A. Coppler, John L. Appel and Joshua D.

Howard), and enters its appearance as counsel for Plaintiff Village of Taos Ski Valley, a New

Mexico municipal corporation, in the above captioned matter.

        Respectfully submitted,

        COPPLER LAW FIRM, P.C.
        *Attorneys for the Village of Taos Ski Valley*
        645 Don Gaspar Avenue
        Santa Fe, New Mexico 87505
        505-988-5656
        Fax:  505-988-5704

        */s/ John L. Appel*
        Gerald A. Coppler
        John L. Appel
        Joshua D. Howard

**EXHIBIT A**

gcoppler@coppler.com
jappel@coppler.com
jhoward@coppler.com

**Certificate of Service**

I HEREBY CERTIFY that the foregoing **Entry of Appearance** was submitted for service on all parties registered for such service through the Court's Odyssey File and Serve system on the 27th day of February, 2023.

COPPLER LAW FIRM, P.C.

/s/ *John L. Appel*
John L. Appel

2

**EXHIBIT A**

FILED
8TH JUDICIAL DISTRICT COURT
TAOS COUNTY NM
FILED IN MY OFFICE
2/27/2023 10:06 AM
LAUREN M. FELTS-SALAZAR
DISTRICT COURT CLERK
BLK

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT COURT

VILLAGE OF TAOS SKI VALLEY, a New
Mexico municipal corporation, and
INTEGRATED WATER SERVICES, INC.,
a Colorado corporation,

       Plaintiffs,

                                    **D-820-CV-2023-00062**

vs.

OVIVO USA, LLC, a Delaware limited
liability company, and LIBERTY MUTUAL
INSURANCE COMPANY, a Massachusetts
corporation,

       Defendants.

## NOTICE OF EXCUSAL

      COMES NOW the Village of Taos Ski Valley, by and through its counsel Coppler Law

Firm, P.C. (Gerald A. Coppler, John L. Appel and Joshua D. Howard), and notifies the Court that

the Honorable Jeffrey Shannon, District Court Judge, is excused from presiding over the above-

captioned matter.

                               Respectfully submitted,

                               COPPLER LAW FIRM, P.C.
                               *Attorneys for the Village of Taos Ski Valley*
                               645 Don Gaspar Avenue
                               Santa Fe, New Mexico 87505
                               505-988-5656
                               Fax:  505-988-5704

                               */s/ John L. Appel*
                               Gerald A. Coppler

1

**EXHIBIT A**

John L. Appel
Joshua D. Howard
gcoppler@coppler.com
jappel@coppler.com
jhoward@coppler.com

**<u>Certificate of Service</u>**

I HEREBY CERTIFY that the foregoing **Notice of Excusal** was submitted for service on all parties registered for such service through the Court's Odyssey File and Serve system on the 27th day of February, 2023.

COPPLER LAW FIRM, P.C.

_/s/ John L. Appel_____
John L. Appel

**EXHIBIT A**

FILED
8TH JUDICIAL DISTRICT COURT
TAOS COUNTY NM
FILED IN MY OFFICE
2/28/2023 10:34 AM
LAUREN M. FELTS-SALAZAR
DISTRICT COURT CLERK
BLK

**STATE OF NEW MEXICO**
**COUNTY OF TAOS**
**EIGHTH JUDICIAL DISTRICT**

**VILLAGE OF TAOS SKI VALLEY, a New**
**Mexico Municipal Corporation, and**
**INTEGRATED WATER SERVICES, INC.,**
**a Colorado Corporation,**
       **Plaintiffs,**

**v.**

**OVIVO USA, LLC, a Delaware Limited**
**Liability Company, and LIBERTY MUTUAL**
**INSURANCE COMPANY, a Massachusetts**
**Corporation,**
       **Defendants.**

## NOTICE OF JUDGE ASSIGNMENT

      The above referenced cause has been reassigned to the Honorable Emilio Chavez, Division I, due to the peremptory excusal of Judge Shannon, Division III, pursuant to NMRA 1-088, filed in our offices on the 27TH day of February 2023.

                    **Lauren M. Felts-Salazar**
                    **Clerk of the Eighth Judicial**
                    **District Court**

                    **By: /s/ Beverly Kuhn**
                    **Judicial Specialist, II**

## CERTIFICATE OF SERVICE

      Notice was delivered to counsel/parties of record on this the 28th day of February, 2023 via electronic filing, mail, hand delivery, and/or by placing a copy in their respective bins in the Eighth Judicial District Court Clerk's office to: Judge Emilio Chavez, Judge Jeffrey Shannon and attorneys of record.

                    /s/ Beverly Kuhn 02-28-2023
                    **Beverly Kuhn**

**EXHIBIT A**

FILED
8TH JUDICIAL DISTRICT COURT
TAOS COUNTY NM
FILED IN MY OFFICE
3/1/2023 11:08 AM
LAUREN M. FELTS-SALAZAR
DISTRICT COURT CLERK
BLK

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT COURT

VILLAGE OF TAOS SKI VALLEY, a New
Mexico municipal corporation, and
INTEGRATED WATER SERVICES, INC.,
a Colorado corporation,

       Plaintiffs,

  vs.

OVIVO USA, LLC, a Delaware limited
liability company, and LIBERTY MUTUAL
INSURANCE COMPANY, a Massachusetts
corporation,

      Defendants.

**D-820-CV-2023-00062**

**Hon. Emilio J. Chavez
Division I**

## DEMAND FOR JURY OF TWELVE (12) PERSONS

COMES NOW the Village of Taos Ski Valley, Plaintiff, by and through its attorneys Coppler Law Firm, P.C. (Gerald A. Coppler, John L. Appel and Joshua D. Howard), and demands a jury of twelve (12) persons on all issues and questions subject to trial by jury in the above-referenced matter, and respectfully advises the Court that no jury fee is required because the Village of Taos Ski Valley is a political subdivision of the State of New Mexico not subject to imposition of such fees in this Court.

      Respectfully submitted,

      COPPLER LAW FIRM, P.C.
      *Attorneys for the Village of Taos Ski Valley*
      645 Don Gaspar Avenue
      Santa Fe, New Mexico 87505
      505-988-5656

1

**EXHIBIT A**

Fax:  505-988-5704

/s/ *John L. Appel*
Gerald A. Coppler
John L. Appel
Joshua D. Howard
gcoppler@coppler.com
jappel@coppler.com
jhoward@coppler.com


**Certificate of Service**

I HEREBY CERTIFY that the foregoing **Demand for Jury of Twelve (12) Persons** was submitted for service on all parties registered for such service through the Court's Odyssey File and Serve system on this 1st day of March, 2023.

COPPLER LAW FIRM, P.C.

/s/ *John L. Appel*
John L. Appel

2

**EXHIBIT A**

4-206

FILED
8TH JUDICIAL DISTRICT COURT
TAOS COUNTY NM
FILED IN MY OFFICE
3/16/2023 3:28 PM
LAUREN M. FELTS-SALAZAR
DISTRICT COURT CLERK

NC

### SUMMONS ON COMPLAINT

| District Court: EIGHT JUDICIAL, Taos County, New Mexico Court Address 105 Albright St. Suite N, Taos, NM 87571 Court Telephone No: 575-758-3173 | Case Number: D-820-CV-2023-00062 |
|---|---|
| | Judge: Emilio Chavez |
| Plaintiff(s): Village of Taos Ski Valley, a New Mexico Municipal Corporation, and Integrated Water Services, Inc. v. Defendant(s): Ovivo USA, LLC, a Delaware Limited Liability Company, and Liberty Mutual Insurance Company, a Massachusetts Corporation | Defendant Name: Ovivo USA, LLC, a Delaware Limited Liability Company Address: c/o Corporation Service Company, its reg. agent 110 E. Broadway St. Hobbs, NM 88240 |

TO THE ABOVE NAMED DEFENDANT(S): Take notice that
1. A lawsuit has been filed against you. A copy of the lawsuit is attached. The Court issued this summons.
2. You must respond to this lawsuit in writing. You must file your written response with the Court no later than thirty (30) days from the date you are served with this Summons. (The date you are considered served with the Summons is determined by Rule 1-004 NMRA) The Court's address is listed above.
3. You must file (in person or by mail) your written response with the Court. When you file your response, you must give or mail a copy to the person who signed the lawsuit.
4. If you do not respond to in writing, the Court may enter judgment against you as requested in the lawsuit.
5. You are entitled to a jury trial in most types of lawsuits. To ask for a jury trial, you must request one in writing and pay a jury fee.
6. If you need an interpreter, you must ask for one in writing.
7. You may wish to consult a lawyer. You may contact the State Bar of New Mexico for help finding a lawyer at www.nmbar.org; 1-800-876-6657; or 1-505-797-6066.

Dated at Taos                      , New Mexico, March 2, 2023 at 2:19 pm
Lauren M. Felts-Salazar

CLERK                                    /s/ Sean R. Calvert
                                         Name: Sean R. Calvert
/s/ Beverly Kuhn    3/2/2023             Calvert Menicucci, P.C.
                                         Address: 8804 Washington NE, Ste. E
                                         Albuquerque, NM 87113
                                         Telephone No.: 505-247-9100
                                         Fax No.: 505-247-9761
                                         Email: scalvert@hardhatlaw.net

THIS SUMMONS IS ISSUED PURSUANT TO RULE 1-004 OF THE NEW MEXICO RULES OF CIVIL PROCEDURE FOR THE DISTRICT COURTS.

**EXHIBIT A**

STATE OF NEW MEXICO       )
                          ) ss
COUNTY OF BERNALILLO      )

I, being duly sworn, on oath, state that I am over the age of eighteen (18) years and not a party to this lawsuit, and that I served this summons in ___Lea__ County on the __13__ day of __March__, 2023 by delivering a copy of this summons, with a copy of complaint attached, in the following manner: {**check one box and fill in appropriate blanks**}

[ ]     to the defendant _____(used when defendant accepts a copy of summons and complaint or refuses to accept the summons and complaint).

[ ]     to the defendant by [mail] [courier service] as provided by Rule 1-004 NMRA (used when service is by mail or commercial courier service).

After attempting to serve the summons and complaint on the defendant by personal service or by mail or commercial courier service, by delivering a copy of this summons, with a copy of complaint attached, in the following manner:

[ ]     to _____, a person over fifteen (15) years of age and residing at the usual place of abode of defendant _____, (used when the defendant is not presently at place of abode) and by mailing by first class mail to the defendant at _____ (insert defendant's last known mailing address) a copy of the summons and complaint.

[ ]     To _____, the person apparently in charge at the actual place of business or employment of the defendant and by mailing by first class mail to the defendant at _____ _____, (insert defendant's business address) and by mailing the summons and complaint by first class mail to the defendant at _____ (insert defendant's last known mailing address).

[ ]     To _____, an agent authorized to receive service of process for Defendant _____.

[ ]     To_____, [parent] [guardian] [custodian] [conservator] [guardian ad litem] of defendant _____ (used when defendant is a minor or an incapacitated person)

[X]     To _Leticia Mendoza_____, __Office Manager____
        Name                        Title of person authorized to receive service.
        (Use this alternative when the defendant is a corporation or association subject to a suit under a common name, a land grant board of trustees, the State of New Mexico or any political subdivision.)

Fees:
                                        _____
                                        Signature of Person Making Service
$65.00
                                        _Process Server  Johnny Rivas___
                                        Title (if any)

Subscribed and sworn to before me this _13_ day of _March_ 20_23_

_8/21/2026_                             _____
My Commission Expires:                  Judge, notary or other officer authorized to administer oaths

                                        _____
                                        Official Title

        State of New Mexico
        Notary Public
        Maria C Puentes
        Commission Number 1123051
        Expiration Date 8/21/2026

¹ If service is made by the sheriff or a deputy sheriff of a New Mexico county, the signature of the sheriff or deputy sheriff need not be notarized.

**EXHIBIT A**

STATE OF NEW MEXICO
COUNTY OF TAOS
EIGHTH JUDICIAL DISTRICT COURT

VILLAGE OF TAOS SKI VALLEY, a New
Mexico municipal corporation, and
INTEGRATED WATER SERVICES, INC.,
a Colorado corporation,

        Plaintiffs,

v.                             Case No. D-820-CV-2023-00062

OVIVO USA, LLC, a Delaware
limited liability company, and
LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts
corporation,

        Defendants.

## DEFENDANT OVIVO USA, LLC'S NOTICE OF FILING OF NOTICE OF REMOVAL

       PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441 and 1446, Defendant Ovivo USA, LLC has filed this day in the United States District Court for the District of New Mexico, a Notice of Removal, a true and correct copy of which is attached hereto as **Exhibit A**. Pursuant to 28 U.S.C. §1446(d), the above-styled action is now removed and the Eighth Judicial District Court, Taos County, New Mexico is divested of jurisdiction over further proceedings.

                    Respectfully submitted,

                    BUTT THORNTON & BAEHR

                    */s/ Monica R. Garcia*
                    Monica R. Garcia
                    P.O. Box 3170
                    Albuquerque, NM 87190
                    Telephone: (505) 884-0777
                    Facsimile: (505) 889-8870

**EXHIBIT B**

mrgarcia@btblaw.com
*Attorneys for Defendant Ovivo USA, LLC*

I HEREBY CERTIFY that on the _____ day of
April 2023, I filed the foregoing electronically
through the electronic filing system, which caused the
following parties or counsel to be served by
electronic means, as more fully reflected on the
Notice of Electronic Filing:

Sean Calvert – scalvert@hardhatlaw.net
*Attorneys for Plaintiff Integrated Water Services, Inc.*

Frank R. Coppler – fcoppler@coppler.com
John L. Appel – jappel@coppler.com
*Attorneys for Plaintiff Village of Taos Ski Valley*


  *_/s/ Monica R. Garcia_____*
Monica R. Garcia

2

**EXHIBIT B**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

VILLAGE OF TAOS SKI VALLEY, a New
Mexico municipal corporation, and
INTEGRATED WATER SERVICES, INC.,
a Colorado corporation,

       Plaintiffs,

v.                     Case No.

OVIVO USA, LLC, a Delaware
limited liability company, and
LIBERTY MUTUAL INSURANCE
COMPANY, a Massachusetts corporation,

       Defendants.

## NOTICE OF CONSENT TO REMOVAL

    **COMES NOW** Defendant Liberty Mutual Insurance Company, by and through its counsel of record, Jennings Haug Keleher McLeod LLP (Alana L. Porrazzo), and pursuant to the requirements under 28 U.S.C. § 1446, hereby gives notice of its consent to removal of this civil action by Defendant Ovivo USA, LLC to the United States District Court for the District of New Mexico. This civil action was initially filed in the Eighth Judicial District Court of New Mexico as Cause No. D-820-CV-2023-00062.

                         Respectfully Submitted,

                         JENNINGS HAUG KELEHER MCLEOD LLP

                         */s/ Alana L. Porrazzo*
                         Alana L. Porrazzo
                         2800 N. Central Avenue, Suite 1800
                         Phoenix, AZ 85004
                         Telephone: 602-234-7800
                         alp@jhkmlaw.com

**EXHIBIT C**

Cassandra R. Malone
201 Third Street NW
Suite 1200
Albuquerque, NM 87102
Telephone: 505-346-4646
crm@jhkmlaw.com

*Attorneys for Defendant*
*Liberty Mutual Insurance Company*

I HEREBY CERTIFY that on the _____ day of
April 2023, I filed the foregoing electronically
through the electronic filing system, which caused the
following parties or counsel to be served by
electronic means, as more fully reflected on the
Notice of Electronic Filing:

Sean Calvert – scalvert@hardhatlaw.net
*Attorneys for Plaintiff Integrated Water Services, Inc.*

Frank R. Coppler – fcoppler@coppler.com
John L. Appel – jappel@coppler.com
*Attorneys for Plaintiff Village of Taos Ski Valley*

Monica R. Garcia – mrgarcia@btblaw.com
*Attorneys for Ovivo USA, Inc.*


*/s/ Alana L. Porrazzo*
Alana L. Porrazzo

**EXHIBIT C**